## Simpson, Admr., v. Deaver

*J. V. Somers*, for plaintiff.

*R. D. Shryock*, for defendant.

LEWIS, J., June 19, 1940.—Defendant and his sister lived with their aunt, Matilda A. Watson, a spinster who operated a rooming house located at 1430 South Broad Street, Philadelphia. On May 5, 1938, the aunt received payment of $6,700 in satisfaction of a bequest. At that time she gave to defendant $1,700 with which to make substantial repairs to the South Broad Street property and to generally refurnish her rooming house. Later on, in the summer of 1938, the aunt gave to defendant an additional sum of $3,000 under an oral agreement, the only

evidence of which is supplied by the testimony of defendant, that defendant would, in consideration of the payment, take care of the aunt and his sister for the remainder of their lives, defendant to pay all bills and everything else, and if the bills exceeded the amount of $3,000, the excess was to be paid by defendant. At the time this money was given to defendant, Matilda A. Watson was indebted on a judgment to the American-Snyder Building & Loan Association. The evidence does not disclose the amount of this judgment. This creditor had attempted to attach the legacy above referred to, but the attachment was dissolved by the court. Following the receipt of the legacy, Matilda A. Watson spent some time in New York visiting a sister, and the attaching creditor tried to bring her into court for an oral examination, but was not successful. Subsequently Miss Watson went to Atlantic City for the summer and did not return to Philadelphia until November 1938. She remained in Philadelphia until her death in February 1939. Apparently her death was due to cancer, from which she had suffered for some time —she was approaching 80 years of age. In the meanwhile, Matilda Barse, her niece, defendant's sister, had also died. The creditor apparently made no attempt to enforce its judgment while Matilda A. Watson was in Philadelphia between November 1938 and the time of her death in February 1939.

The only testimony in the case is that given by defendant, who was called for cross-examination by plaintiff. He acknowledged that he knew of the indebtedness of Matilda A. Watson to the building and loan association, and possessed this knowledge at the time his aunt turned over to him the funds in controversy. He asserted his aunt was totally unable to manage her own affairs; that she was not physically able to provide for her daily living except with defendant's assistance.

There was no evidence that directly established the aunt's insolvency at the time of the transfer of the funds

to defendant, nor that she became insolvent by reason of the transfer of the funds to defendant. She retained in her own possession, apparently, at least $2,000 of the bequest, together with such other assets as she may have owned. There is nothing in the pleadings or in the testimony to fix the amount due by Matilda A. Watson to the building and loan association, except that Mr. Somers made a statement at the bar of the court from which we conclude the judgment was a little in excess of $3,000. Nor is there evidence of any other indebtedness.

Defendant accounted for the $1,700 first turned over to him by stating he had spent this money for repairs to his aunt's rooming house and for the refurnishing of the building. He accounted for the $3,000 in part by stating he had used a portion of the sum to purchase the South Broad Street property, which his aunt had theretofore rented. This purchase was made through the Western Saving Fund Society at a cost of approximately $1,200. He asserts that the purpose of the purchase was to assure his aunt a home for the remainder of her life, and this was in accordance with the oral agreement he had made with her. He further testified that he expended $50 a month for 12 months in payments to amortize the first mortgage on the property, and had used the remainder of the money in providing support and medical attention for his aunt and in paying for the expenses of her funeral. Defendant testified positively that no part of the money remained unexpended. This testimony was not contradicted.

Our courts have held that ordinarily there is no consideration for a contract for future support so as to make it operative to protect from attachment by an existing creditor the assets transferred on such agreements. This is regardless of fraudulent intent or the absence of fraud. The reason for this rule is that the effect of such an agreement is virtually to create a trust for the debtor

from his own property. The law does not permit a debtor so to place his property beyond the reach of his creditors. However, we are not called upon to decide whether a contract for future support, totally unexecuted, can be set aside; nor are we to decide how much of the contract has been earned, as would have been the case had this action been brought during the lifetime of Miss Watson. We are confronted with a contract for support, not in the future, but fully performed, no longer executory, but executed. A valuable consideration has passed, and this removes the case from those controlled by the rule that holds contracts for future support fraudulent as to creditors. Defendant was under no legal obligation to support his aunt, which distinguishes this case from those cited by counsel for plaintiff, all of which deal with a conveyance from a parent to a child, where there was a legal obligation to support. Defendant herein undertook a legal obligation which prior to the agreement did not exist. There was valuable consideration for the transfer to him of the money. While it was still a contract for future support it was subject to attack by creditors, at least as to that portion which had been unearned. Where support has been furnished in good faith, and the agreement has been totally executed, such an agreement must be sustained to the extent that the funds transferred were used for the purpose of the agreement.

The bill asks for an accounting, yet the testimony introduced has in itself the effect of an accounting. Defendant declared that he had expended in her behalf all the funds given to him for the support of his aunt, and that nothing remains. To this extent plaintiff has already secured the relief sought by the bill, namely, an accounting. It would not be equitable to give further relief, such as to require defendant to make up from his own funds money lawfully and properly expended for the support of his aunt. The bill must, therefore, be dismissed.